# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | * |
| BENEDICT EMESOWUM, | * |
| Plaintiff, | * |
| v. | * |
| NATIONAL SECURITY AGENCY, | *   Civil No. 24-360-BAH |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Pro se plaintiff Benedit Emesowum ("Plaintiff" or "Emesowum") brought suit against the National Security Agency ("Defendant" or the "NSA") and NSA employee Paula A. Gill ("Gill") raising claims related to a request made pursuant to the Freedom of Information Act ("FOIA") for footage from cameras at the NSA's facility at Fort Meade, Maryland. ECF 1. Gill was dismissed from the action in the Court's ruling on a prior motion to dismiss, as was Emesowum's claim for punitive damages and any request for attorneys' fees. ECF 19 (memorandum opinion); ECF 20 (implementing order). Now pending before the Court is the NSA's motion for summary judgment. ECF 21. Emesowum filed an opposition, ECF 23, to which the NSA replied, ECF 24. All filings include memoranda of law, and the NSA's motion and Emesowum's opposition include exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, the NSA's motion for summary judgment is **GRANTED**.

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

## I.    **BACKGROUND**

### A.    **Factual Background**

On May 19, 2023, Emesowum submitted a FOIA request for records from "May 09, 2023, at entry MD41 between 12:00pm and 2:00pm," including:

1)    Video record of vehicles that arrived at that gate entrance and any detentions/arrests that occurred at that entrance.

2)    The total number of tickets issued at all entrances to the Fort in the past 12 months.

3)    The total number of rejections to entry that have occurred at all entrances for the past 12 months from May 09, 2023, to May 09, 2022.

ECF 23-2, at 1; *see also* ECF 23-3, at 1; ECF 1-1, at 1.  In a letter sent to Emesowum on June 23, 2023, the NSA indicated that his FOIA request "was received on 6 June 2023, and assigned Case Number 116488."  ECF 23-2, at 1.[2]  Ultimately, the NSA produced records responsive to items two and three of Emesowum's request but did not provide Emesowum with any records or footage responsive to item one.  *See* ECF 13, at 1.  According to Emesowum, the NSA stated that "[i]n regard to item 1 of [the] request: a search of our files was conducted, but no responsive records were located."  *Id.* at 2.

The NSA attaches to its motion for summary judgment a declaration from William Lovelace ("Lovelace"), which seeks to describe "the process that was taken to determine that the requested footage was not available."  ECF 21-2, at 1 ¶ 2.  Lovelace is the "Technical Director for a division within the Security and Counterintelligence ('S&CI') organization" for the NSA who has served the agency for "almost fifteen (15) years."  *Id.* ¶ 1.  Lovelace's division is "charged with management and oversight responsibilities for NSA's world-wide security systems," and in his role as Technical Director he ensures "the continuous operation and future development" of

---

[2] Neither the complaint nor the filings related to the motion for summary judgment provide further context regarding any underlying reasons for Emesowum's FOIA request.

such systems. *Id.* Lovelace notes that his division was the "appropriate team to conduct a search for the requested footage" in response to Emesowum's FOIA request. *Id.* ¶ 2.

Lovelace asserts that the NSA's "Record Destruction Schedule (RDS) 340-24A," which incorporates "NARA GRS 5.6 item 100," "governs records documenting routine operations at access control points," where some video recording systems are in operation. *Id.* at 2 ¶¶ 3–5. Emesowum includes item 100 of "General Records Schedule 5.6" as an exhibit to his opposition. *See* ECF 23-1. That item is applicable to "[a]ccident and incident records," and provides that "[r]ecords documenting accidents and incidents" occurring on agency property are "temporary" and are "[d]estroy[ed] 3 years after final action." *Id.* at 1. However, the item also lists several "[e]xclusions" to the general policy, including for "[r]ecords related to federal law enforcement and federal correction activities." *Id.* "Agencies that create these records must schedule them on agency-specific schedules." *Id.* Lovelace asserts that the NSA's RDS permits video recordings at access control points, including "NSA entry points," "to be destroyed when 30 days old." ECF 21-2, at 2 ¶¶ 3–5. "In accordance with industry standards and equipment capabilities," Lovelace notes that "the recording systems are configured to store a specific capacity of video footage." *Id.* ¶ 6. Upon reaching that capacity, the recording systems "begin to overwrite the prior footage." *Id.* "To ensure compliance with the RDS," the NSA has "selected" a 30-day "limit for the systems." *Id.*

"On Friday, June 9, 2023, the NSA FOIA Office tasked S&CI to search for the video footage requested" by Emesowum. *Id.* ¶ 7. On June 13, 2023, S&CI "sent the FOIA request and search tasker to [Lovelace's] division for processing." *Id.* "The FOIA request sought video footage from 'entry MD41' for May 9th, 2023, between the hours of 12-2 PM." *Id.* ¶ 8. Lovelace notes that "'MD 41' is used to designate the entirety of NSA's campus" and so Emesowum's

request did not identify the particular access point from which he sought footage. *Id.* By June 13, 2023, "36 days had elapsed since the footage would have been recorded." *Id.* at 3 ¶ 9. Accordingly, Lovelace's division "concluded that, based on the system configuration described . . . , the requested video footage was no longer available" and "notified the NSA FOIA office of" that determination. *Id.*

The NSA's June 23, 2023 letter to Emesowum noted receipt of his request and warned that, "[d]ue to the large volume of requests being received," the NSA was "experiencing delays in processing" but noted it had "begun to process" his request and would "provide a more substantive response at a later date." ECF 23-2, at 1. On September 27, 2023, the NSA sent Emesowum a follow-up letter, stating that the NSA had "completed [its] search for records responsive to [his] request," but the "material responsive . . . requires review prior to release." ECF 23-3, at 1. The letter noted that due to "a significant number of cases ahead of [his] in the queue," the NSA was unable to complete its response to Emesowum's "request within 20 days." *Id.* A later email exchange in December of 2023 between Emesowum and the NSA's acting Chief FOIA Liaison Officer reflected a similar message. ECF 23-4, at 1 ("Please be advised there is a significant number of FOIA requests ahead of yours in our FOIA backlog queue.").

### B.    Procedural History

On February 5, 2024, Emesowum, proceeding pro se, filed his complaint in this Court under FOIA, ECF 1, indicating that he wrote, emailed, and called the NSA about "fulfilling his FOIA request to no avail," *id.* at 6. He also filed a motion to proceed *in forma pauperis*, ECF 2, which the Court granted, ECF 4. Emesowum's complaint requests "immediate[ ]" release of "all documents requested" as well as "[p]unitive damages exceeding $75,000 for [the NSA's] blatant obstruction." ECF 1, at 7. On April 26, 2024, the NSA and Gill filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim, pursuant to Rules 12(b)(1) and

12(b)(6) of the Federal Rules of Civil Procedure.  ECF 11.  The Court granted in part and denied

in part the motion to dismiss on March 18, 2025.  ECF 19 (memorandum opinion); ECF 20

(implementing order); *see also Emesowum v. Nat'l Sec. Agency*, Civ. No. 24-0360-BAH, 2025

WL 847905 (D. Md. Mar. 18, 2025).

In its opinion, the Court dismissed Gill from the case, as FOIA only authorizes district

courts to "enjoin the *agency* from withholding agency records" and does not make any provision

for suits against agency employees.  5 U.S.C. § 552(a)(4)(B) (emphasis added).  The Court also

dismissed Emesowum's request for punitive damages because a plaintiff bringing suit under FOIA

may collect neither punitive nor other monetary damages.  *Eltayib v. U.S. Coast Guard*, 53 F.

App'x 127, 127 (D.C. Cir. 2002).  And because Emesowum was proceeding unrepresented, the

Court observed that pro se litigants who are not attorneys are "not entitled to an award of attorneys'

fees under FOIA."  *Id.* at 127–28 (citing *Benavides v. Bureau of Prisons*, 993 F.2d 257, 258-59

(D.C. Cir. 1993)); *see also Emesowum*, 2025 WL 847905, at *4.

However, the Court denied the NSA's motion to dismiss Emesowum's FOIA claim.  *See*

*Emesowum*, 2025 WL 847905, at *2–3.  The NSA argued that Emesowum's claim was mooted by

the NSA's disclosure of "all of the requested information in its possession."  ECF 11-1, at 5.

Emesowum responded that the case was not moot because his video request had not been fulfilled,

ECF 13, at 3, and the NSA countered that the requested video had been deleted in accordance with

the applicable record retention policy, ECF 16, at 2.  However, at the motion to dismiss stage, and

absent any evidence appended to the motion, the Court could not simply accept the NSA's claim

that the requested video no longer existed.  *Emesowum*, 2025 WL 847905, at *3.  The Court noted,

however, that "[a]ssuming the assertions in Defendants' filings regarding the destruction of the

video [could] be properly supported, Defendants could quickly move for summary judgment." *Id.* at *3 n.4.

On May 7, 2025, the NSA filed the pending motion for summary judgment, ECF 21, arguing that judgment is warranted in its favor based on the nonexistence of the requested video. ECF 21, at 1. The same day, a Rule 12/56 notice was mailed to Emesowum, ECF 22, and on May 31, 2025, he filed his response in opposition to the NSA's motion for summary judgment, ECF 23. On June 12, 2025, the NSA filed its reply. ECF 24. The pending motion is now ripe for resolution.

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

"Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists." *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 608 F. Supp. 3d 369, 373 (E.D. Va. 2022) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986)). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

6

The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007), and the Court "may not make credibility determinations or weigh the evidence," *Progressive Am. Ins. Co.*, 608 F. Supp. 3d at 373 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007)).  For this reason, summary judgment ordinarily is inappropriate when there is conflicting evidence because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.  *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)).  "The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion." *Progressive Am. Ins. Co.*, 608 F. Supp. 3d at 373 (citing *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)).

Because Plaintiff brings this suit pro se, the Court must liberally construe his filings, holding them to a less stringent standard than those drafted by attorneys.  *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  This leniency has its limits, though.  "A court may not construct the plaintiff's legal arguments for him, nor is a district court required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Runge v. Barton*, No. CIVA 6:08-0231-GRA, 2009 WL 3245471, at *1 (D.S.C. Oct. 2, 2009) (first citing *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993); and then quoting

*Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)), *aff'd*, 368 F. App'x 361 (4th Cir. 2010).

III.  **ANALYSIS**

FOIA empowers district courts to "enjoin an agency from withholding agency records and to order the publication of any agency records improperly withheld from the complainant." *Kissinger v. Reps. Comm'n for Freedom of the Press*, 445 U.S. 136, 139 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)).  Specifically, 5 U.S.C. § 552(a)(4)(B) vests federal district courts with subject matter jurisdiction when a plaintiff alleges that a federal agency "(1) improperly; (2) withheld; (3) agency records." *Id.* at 150 (internal quotation marks omitted).  A federal district court may not "force an agency to comply with the FOIA's disclosure requirements" unless a plaintiff satisfies these three elements. *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 (1989).

"It is undisputed that a challenge to a particular denial of a FOIA request becomes moot if an agency produces the requested documents." *Reg'l Mgmt. Corp. v. Legal Servs. Corp.*, 186 F.3d 457, 465 (4th Cir. 1999) (citing *Payne Enter, Inc. v. United States*, 837 F.2d 486, 490–91 (D.C. Cir. 1988)).  However, "an action is not moot simply because an agency has decided that its partial disclosures are enough." *Furrow v. Fed. Bureau of Prisons*, 420 F. App'x 607, 610 (7th Cir. 2011).  Rather, "[a]n agency responding to a FOIA request" must show that it "conduct[ed] a search 'reasonably calculated to uncover all relevant documents[.]'" *Cochran v. Dep't of Homeland Sec.*, Civ. No. ELH-18-201, 2019 WL 1433014, at *5 (D. Md. Mar. 28, 2019) (quoting *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010)).  "Courts should dismiss a FOIA action where the agency *demonstrated* that it did not withhold any records responsive to plaintiff's FOIA request." *Potomac Nav., Inc. v. U.S. Mar. Admin.*, Civ. No. WMN-09-217, 2009 WL 5030710, at *1 (D. Md. Dec. 15, 2009) (emphasis added).  "The issue is not whether any further documents

might conceivably exist but rather whether the government's search for responsive documents was adequate." *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982). Typically, the question of the adequacy of an agency's search for the requested records is resolved on a motion for summary judgment, affording a district court the benefit of a review of material outside the pleadings. *Ahuruonye v. U.S. Dep't of Interior*, 239 F. Supp. 3d 136, 140 (D.D.C. 2017) (citing *Ortiz v. U.S. Dep't of Just.*, 67 F. Supp. 3d 109, 116 (D.D.C. 2014)).

Importantly, in response to a FOIA request, an agency is not "required to recreate or to reacquire a document that it no longer has." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (citing *Yeager v. Drug Enforcement Admin.*, 678 F.2d 315, 321 (D.C.Cir.1982)). "The FOIA provides a claimant with a remedy only against an agency that has 'improperly withheld' a record." *Id.* (first quoting 5 U.S.C. § 552(a)(4)(B); and then citing *GTE Sylvania, Inc. v. Consumers Union of United States, Inc.*, 445 U.S. 375, 384 (1980)). "If the agency is no longer in possession of the document, for a reason that is not itself suspect, then the agency is not improperly withholding that document and the court will not order the agency to take further action in order to produce it." *Id.* "Of course, an agency cannot, in bad faith, 'avoid a FOIA request by intentionally ridding itself of a requested document.'" *Pinson v. Dep't of Just.*, 236 F. Supp. 3d 338, 356 n.24 (D.D.C. 2017) (quoting *DiBacco v. U.S. Army*, 795 F.3d 178, 192 (D.C. Cir. 2015)). "But, the bar on *intentionally* destroying material sought by a FOIA request does not forbid an agency from unintentionally destroying FOIA material in accordance with a neutral record retention policy." *Id.* (emphasis in original). Destruction in accordance with "[a]n agency's routine record retention policy . . . is the paradigmatic example of a non-suspect explanation for destroying a document." *Id.* (citing *Boyd v. Crim. Div. of U.S. Dep't of Just.*, 475 F.3d 381, 392 (D.C. Cir. 2007)).

Lovelace's declaration describes "the process that was taken to determine that the requested footage was not available." ECF 21-2, at 1 ¶ 2. "In order to establish the adequacy of a search, agency affidavits must be . . . 'relatively detailed and non-conclusory, and . . . submitted in good faith.'" *SafeCard Servs., Inc.*, 926 F.2d at 1200 (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Id.* (quoting the same). The Court finds that Lovelace's affidavit is sufficiently detailed and non-conclusory to warrant summary judgment as to the reasonableness of the search for records conducted here. "On Friday, June 9, 2023," three days after the NSA received Emesowum's FOIA request, ECF 23-2, at 1, the NSA FOIA office tasked S&CI to search for the video footage requested" by Emesowum, ECF 21-2, at 2 ¶ 7. Four days later, S&CI "sent the FOIA request and search tasker to [Lovelace's] division for processing." ECF 21-2, at 2 ¶ 7. However, by June 13, 2023, "36 days had elapsed since the footage would have been recorded." *Id.* at 3 ¶ 9. Accordingly, Lovelace's division concluded that the requested video footage was no longer available, in accordance with the NSA's RDS, and "notified the NSA FOIA office of its determination. *Id.*

As discussed, the Court acknowledges that the NSA could not avoid Emesowum's FOIA request by "intentionally ridding itself" of responsive footage. *DiBacco*, 795 F.3d at 192. "The critical issue, then, in a dispute over a document that an agency no longer has, is the agency's motivation for disposing of or transferring that document." *Id.* "If the agency is no longer in possession of the document, *for a reason that is not itself suspect*, then the agency is not improperly withholding that document[.]" *SafeCard Servs., Inc.*, 926 F.2d at 1201 (emphasis added).

Emesowum advances several arguments as to why the Court should view the NSA's explanation here as suspect. The Court is not persuaded by any of them.

Emesowum emphasizes that despite filing his FOIA request for security footage "in lightning fashion," or 10 days after the incident in question, the requested footage was unable to be retrieved before deletion. ECF 23, at 1. Emesowum urges the Court to find incredulous the NSA's assertion that it could not "handle such a perfunctory function in a timely manner." *Id.* at 1–2. But federal courts addressing allegations involving the destruction of records have "rejected the notion that an initial agency delay in responding to a FOIA request constitutes bad faith." *See Boyd*, 475 F.3d at 391. Accordingly, the NSA does not need to "specify the date on which the [agency] destroyed responsive documents" to persuade the Court that it was operating in good faith. *Id.* "[E]ven if the documents were destroyed during the relevant time frame, their destruction, if performed in accordance with [the] specified guidelines, would not imply bad faith." *Id.*

In an attempt to make a "proffer of a contrary records destruction schedule," *id.*, and imply bad faith, Emesowum contends that Lovelace's representations about the NSA's RDS are "patently false if not perjurious" because item 100 of GRS 5.6 attached to his opposition shows that the "any security video records should be retained for 3 years." ECF 23, at 3 (emphasis omitted). However, Emesowum's argument ignores the exclusions to that general policy, which require an agency such as the NSA that maintains records "related to federal law enforcement and federal correctional activities" to schedule such records "on agency-specific schedules." ECF 23-1, at 1. As Emesowum's FOIA request indicates, the video records he sought were "of vehicles that arrived at that gate entrance and any detentions/arrests that occurred at that entrance." ECF 23-2, at 1. But video records related to "detentions/arrests" would fall under item 100's exclusion for records

"related to federal law enforcement and federal correctional activities," as Lovelace explains, and thus permits the NSA to establish an agency-specific schedule for destroying those records.  ECF 21-2, at 2 ¶ 5.  Emesowum points to nothing else on this record suggesting that Lovelace's assertion about the NSA's applicable RDS is "false" or "perjurious," and so his attempt to proffer a contrary records destruction schedule fails.

In another attempt to show bad faith, Emesowum points to what he views as an inconsistency between the NSA's communications with him and the position the NSA takes to defend this litigation.  *See* ECF 23, at 4–5.  Specifically, Emesowum contends that "in the September 2023 secondary letter and December email from the NSA, it was suggested that the requests were responsive," but "the NSA changed their statement from [']responsive to['] in their second letter, to [']non-responsive['] after [Emesowum] sued the department for delays in providing said video."  *Id.* (citing ECFs 23-2 and 23-3).  It is true that the NSA identified in its communications that "material responsive to [Emesowum's] request require[d] review prior to release."  ECF 23-3, at 1.  However, Emesowum's FOIA request sought information beyond just the video recordings from May 9, 2023—it also sought the "total number of tickets issued at all entrances to the [F]ort in the past 12 months," along with the "total number of rejections to entry" at "all entrances" over "the past 12 months."  ECF 23-2, at 1.  Accordingly, follow-up communications from the NSA to Emesowum that imply responsive material was located are not inconsistent with the assertion that the video recordings he sought were deleted pursuant to the NSA's routine record retention policies.  Indeed, as Emesowum admits, certain responsive material was in fact produced to him.  *See* ECF 13, at 1–2.  Accordingly, the Court does not read the record as containing any inconsistent statements from the NSA related to Emesowum's request.

Finally, Emesowum advances a purposivist argument, contending that "[o]ne of the main purposes of the FOIA is to ensure honesty and transparency between government agencies and the people," and "[i]f the NSA cannot respond and preserve documents/video footage timely, then they violated the law and spirit of the FOIA." ECF 23, at 3–4. Federal courts have held that "unreasonable delays in *disclosing* non-exempt documents violate the intent and purpose of the FOIA, and [that] courts have a duty to prevent these abuses." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (emphasis added) (quoting *Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982)). But "FOIA 'does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained.'" *Kohake v. Dep't of Treasury*, 630 F. App'x 583, 588 (6th Cir. 2015) (quoting *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980)). Accordingly, "[d]estroying records pursuant to a records retention policy . . . does not violate the FOIA," either in text or in spirit. *Id.* at 589; *see also Anderson v. U.S. Dep't of Just.*, 518 F. Supp. 2d 1, 9–10 (D.D.C. 2007) ("An agency does not violate the FOIA for its failure to locate records destroyed in accordance with an agency's normal retention policy."). Accordingly, the Court concludes that summary judgment in favor of the NSA is warranted.

## IV.    **CONCLUSION**

For the foregoing reasons, the NSA's motion for summary judgment is granted. The Clerk will be directed to enter judgment in favor of the NSA and against Emesowum and to close the case.

A separate implementing order will issue.

Dated: <u>February 26, 2026</u>                                    <u>            /s/            </u>
                                                                              Brendan A. Hurson
                                                                              United States District Judge